**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
COAL RIVER MOUNTAIN WATCH,
and SIERRA CLUB**

        **Plaintiffs,**

    **v.**                      **CIVIL ACTION NO.**   5:12-1464

**MARFORK COAL COMPANY, INC. and
INDEPENDENCE COAL COMPANY, INC.,**

        **Defendant.**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL
PENALTIES**

**INTRODUCTION**

1.      This is an action for declaratory judgment and mandatory injunctive relief and for

civil penalties against Defendants for violations of the Federal Water Pollution Control Act, 33

U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA"), and the Surface

Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq.  (hereinafter "SMCRA").

2.      As detailed below, Plaintiffs allege that Defendants discharged and continue to

discharge selenium—a pollutant designated as toxic by the U.S. Environmental Protection

Agency, 40 C.F.R. § 401.15—into waters of the United States in persistent violation of Section

301 of the Clean Water Act, 33 U.S.C. § 1311, and of the conditions and limitations of two West

Virginia/National Pollution Discharge Elimination System ("WV/NPDES") Permits issued to

Defendants by the State of West Virginia pursuant to Section 402 of the Clean Water Act.

3.      Plaintiffs further allege that Defendants' discharges of unlawful quantities of selenium into the waters adjacent to its mine sites violate the performance standards under SMCRA and the terms and conditions of its surface mining permits.

## JURISDICTION AND VENUE

4.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (Clean Water Act citizens' suit provision), and 30 U.S.C. § 1270 (SMCRA citizens' suit provision).

5.      On March 9, 2012, Plaintiffs gave notice of the violations and their intent to file suit to Defendants, the United States Environmental Protection Agency ("EPA"), the United States Department of Interior, the Office of Surface Mining, Reclamation, and Enforcement ("OSMRE"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)(A).

6.      More than sixty days have passed since notice was served.  EPA, OSMRE, and/or WVDEP have not commenced or diligently prosecuted a civil or criminal action to redress the violations.  Moreover, neither EPA nor WVDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to redress the violations prior to the issuance of the March 9, 2012 notice letter.

7.      Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District, and pursuant to 30 U.S.C. § 1270(c) because the coal mining operations complained of are located in this District.

## PARTIES

8.      Marfork Coal Company, Inc. ("Marfork"), is a West Virginia corporation doing

2

business in, among other places, Raleigh County, West Virginia.

9.      Marfork is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

10.     At all relevant times, Marfork owned and operated the Brushy Fork Slurry Impoundment in Raleigh County, West Virginia, which is regulated by Surface Mining Permit O301095 and which discharges pollutants from various outfalls that are subject to the effluent limitations and terms and conditions of WV/NPDES Permit WV1015044.

11.     Independence Coal Company, Inc. ("Independence"), is a is a West Virginia corporation doing business in, among other places, Boone County, West Virginia.

12.     Independence is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

13.     At all relevant times, Independence owned and operated the Crescent No. 2 Surface Mine in Boone County, West Virginia, which is regulated by Surface Mining Permit S502007 and which discharges pollutants from various outfalls that are subject to the effluent limitations and terms and conditions of WV/NPDES Permit WV1029711.

14.     Plaintiff Ohio Valley Environmental Coalition (hereinafter "OVEC") is a nonprofit organization incorporated in Ohio.  Its principal place of business is in Huntington, West Virginia.  It has approximately 1,500 members.  Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach.  The Coalition has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

15.     Plaintiff West Virginia Highlands Conservancy, Inc., (hereinafter "WVHC") is a nonprofit organization incorporated in West Virginia.  It has approximately 2,000 members.  It

works for the conservation and wise management of West Virginia's natural resources.

16.     Plaintiff Coal River Mountain Watch, Inc. ("CRMW"), is a nonprofit membership organization located in southern West Virginia with approximately 500 members, most residing in West Virginia.  Its mission is to establish and maintain social, economic, and environmental justice in the southern coalfields of West Virginia, to keep communities intact, and to improve the quality of life in these communities.  Coal River Mountain Watch is a local leader in environmental and community issues related to the impacts of mountaintop removal coal mining.

17.     Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and approximately 1,900 members who reside in West Virginia and belong to its West Virginia Chapter.  The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.  The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

18.     Plaintiffs' members suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of Defendants' unlawful discharges of selenium.  Plaintiffs' members fish, swim, observe wildlife, hike near, observe wildlife in, photograph, and/or otherwise use the waters affected by Defendants' discharges and are harmed by the high levels of selenium that Defendants are discharging in violation of their permits.  Plaintiffs' members refrain from those activities and/or enjoy them less because of Defendants' unlawful discharges.  Plaintiffs' members are also very concerned about the impacts of pollution from Defendants' discharges on their friends and neighbors and on local wildlife.  If Defendants' unlawful discharges ceased, the harm to the interests of Plaintiffs' members could be redressed.

4

Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future violations of the limits in and conditions of Defendants' permits.

19.     At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5), and SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

### *Clean Water Act*

20.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

21.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

22.     Section 402 of the CWA, 33 U.S.C. § 1342, directs the Administrator of EPA to prescribe conditions for NPDES permits to ensure compliance with the requirements of the CWA, including conditions on data and information collection, reporting, and other such requirements as the Administrator deems appropriate.

23.     Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents of wastewater discharges.  Effluent limitations are among the conditions and limitations prescribed in NPDES permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

24.     Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies that will protect the designated uses of the water.  When technology-based effluent limitations are insufficient to keep receiving waters within those levels, the permit must include stricter water quality based effluent limits ("WQBELs") that reflect water quality standards and criteria. 33 U.S.C. § 1311(b)(1)(C).

25.     At all times relevant to this complaint, the State of West Virginia has been authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into the waters of West Virginia.  Permits issued under this program are known as "WV/NPDES" permits.

26.     Holders of WV/NPDES Permits are required to monitor their discharges and report their average monthly discharges and maximum daily discharges on a quarterly basis. Those reports are called "Discharge Monitoring Reports," or "DMRs."

27.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of  . . . an effluent standard or limitation under this chapter."

28.     Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA, a WQBEL, and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

29.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1365(d).  See 33 U.S.C. §

6

1365(a).

30.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

31.     Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009.  See 40 C.F.R. § 19.4.

32.     Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

### *Surface Mining Control and Reclamation Act*

33.     Section 506 of SMCRA, 30 U.S.C. § 1256, prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from the Office of Surface Mining Reclamation and Enforcement ("OSMRE") or from an approved state regulatory authority.

34.     At all relevant times, the State of West Virginia has administered an approved surface mining regulatory program.  See 30 C.F.R. § 948.10.

35.     The legislative rules promulgated under the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA") provide that, as a general condition of all surface mining permits issued under the WVSCMRA, the permittee must comply with all applicable performance standards.  38 C.S.R. § 2-3.33.c.

36.     Among the performance standards mandated by SMCRA and the WVSCMRA is

that mining activities must be conducted in such a manner so as to "prevent material damage to the hydrologic balance outside the permit area."  30 C.F.R. §§ 816.41(a) and 817.41(a); 38 C.S.R. § 2-14.5.

37.     Another performance standard mandated by SMCRA and the WVSCMRA is that "[d]ischarge from areas disturbed by . . .  mining shall not violate effluent limitations or cause a violation of applicable water quality standards."  30 C.F.R. §§ 816.42 and 817.42; 38 C.S.R. § 2-14.5.b.

38.     SMCRA and the WVSCMRA also include a performance standard requiring that "[if] drainage control, restabilization and revegetation of disturbed areas, diversion of runoff, mulching, or other reclamation and remedial practices are not adequate to meet the requirements of this section and § 816.42, the operator shall use and maintain the necessary water-treatment facilities or water quality controls."  30 C.F.R. § 816.41(d)(1); see also 38 C.S.R. § 2–14.5.c ("Adequate facilities shall be installed, operated and maintained using the best technology currently available in accordance with the approved preplan to treat any water discharged from the permit area so that it complies with the requirements of subdivision 14.5.b of this subsection.").

39.     Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), authorizes any person adversely affected to bring an action in federal court to compel compliance with SMCRA against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."

40.     Section 520(d) of SMCRA, 30 U.S.C. § 1270(d), authorizes the Court to award the costs of litigation, including attorney fees and expert witness fees, "to any party, whenever the court determines such an award is appropriate."

41.     WVDEP is the agency in the State of West Virginia that administers that State's

CWA and SMCRA programs, and issues WV/NPDES Permits and WVSCMRA Permits.

## FACTS

### *WV/NPDES Permit WV1015044*

42.     At all relevant times, Independence has held WV/NPDES Permit WV1015044 to regulate water pollution from its Brushy Fork Slurry Impoundment.

43.     At all relevant times, Independence has held WVSCMRA Permit O301095 for its Brushy Fork Slurry Impoundment.

44.     Outfall 001 regulated by WV/NPDES Permit WV1015044 discharges into Brushy Fork of Little Marsh Fork of Marsh Fork of the Big Coal River.  Those waterways are all navigable waters of the United States.

45.     Marfork operates a surface mining facility adjacent to the Brushy Fork Slurry Impoundment called the Beetree Surface Mine.

46.     The Beetree Surface Mine is regulated by WV/NPDES Permit WV1021788 and Surface Mining Permit S301004 (the "Beetree permits").

47.     The Beetree permits require Marfork to monitor surface water quality—including selenium concentrations—in Brushy Fork at a sampling point identified as "DBF."

48.     Monitiroing point DBF is within approximately 50 feet of Outfall 001 regulated by WV/NPDES Permit WV1015044.

49.     WV/NPDES Permit WV1015044 includes a condition that "[t]he discharge or discharges covered by [this] WV/NPDES permit are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2."  47 C.S.R. § 30-5.1(f).

50.     West Virginia has established specific numeric water quality standards for selenium in order to protect the biological integrity of streams and to maintain aquatic life.

Those standards include a chronic criterion of 5 µg/l and an acute criterion of 20 µg/l for selenium.

51.     Reports submitted by Marfork under the terms of WV/NPDES Permit WV1021788 for the Beetree Surface Mine reveal that Marfork has discharged selenium into Brushy Fork from the Brushy Fork Slurry Impoundment in amounts that violate water quality standards and, thus, the condition in its permit prohibiting discharges that violate those standards.

52.     Because there are no other discharges into Brushy Fork between Outfall 001 regulated by WV/NPDES Permit WV1015044 and the monitoring point DBF, the only possible source of the selenium measured at DBF is Outfall 001.

53.     Appendix A to this Complaint sets forth the instances where Marfork has reported selenium concentrations at monitoring point DBF that exceed the numeric selenium water quality criteria.

54.     Those data indicate that Marfork's discharges have caused violations of the chronic and acute selenium water quality standards on multiple occasions between December 1, 2008, and January 31, 2012.

55.     On the basis of Marfork's pattern of violations of discharging excess selenium from Outfall 001 regulated by WV/NDPES Permit Number WV1015044 and the absence of any evidence of any meaningful efforts by Marfork to eradicate the cause of the violations, Plaintiffs allege that Marfork is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

### *WV/NPDES Permit WV1029711*

56.     At all relevant times, Independence has held WV/NPDES Permit Number WV1029711 to regulate water pollution from its Crescent No. 2 Surface Mine.

57.     At all relevant times, Independence has held WVSCMRA Permit S502007 for its

10

Crescent No. 2 Mine.

58.    WV/NPDES Permit Number WV1029711 places limits on the concentrations of selenium that Independence can discharge into Petry Fork of Matts Creek of the West Fork of Pond Fork of the Little Coal River from Outfall 001.  Each of those waterways is a navigable water of the United States.

59.    Those limitations became effective on the issuance of WV/NPDES Permit WV1029711 by WVDEP in December 2008, and limit the selenium concentration in Independence's discharge to 4.7 µg/l as a monthly average and 8.2 µg/l as a daily maximum.

60.    The DMRs that Independence submitted to WVDEP reveal that Independence has discharged selenium in excess of the final effluent limitations for selenium from Outfall 001.

61.    As outlined in the chart attached as Appendix A to this Complaint, Independence violated the final effluent limitations on Outfall 001 of WV/NPDES Permit WV1029711 at least 25 times for a total of 320 days of violation between March 1, 2010, and March 31, 2012.

62.    On the basis of Independence's pattern of violations of its effluent limitations in WV/NDPES Permit Number WV1029711 and the absence of any evidence of any meaningful efforts by Independence to eradicate the cause of the violations, Plaintiffs allege that Independence is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

***Plaintiffs' 60-Day Notice Letter Regarding WV/NPDES Permits WV1015044 and WV1029711***

63.    Plaintiffs sent a notice of intent letter (hereinafter, "NOI"), postmarked on March 9, 2012, to Defendants, notifying them that their discharges of selenium and their violations of the effluent limitations and other terms and conditions of WV/NPDES Permits WV1015044 and WV1029711 violate the Clean Water Act and SMCRA.

64.    The NOI also notified Defendants of Plaintiffs' intent to sue Defendants for those violations at the end of the 60-day period required by statute.

65.     The NOI was sent by certified mail, return receipt requested, to the following persons:  Eric D. Salyer, President, Independence Coal Company, Inc.; Charles I. Bearse III, President, Marfork Coal Company, Inc.; Secretary Randy Huffman, WVDEP; Shawn M. Garvin, Regional Administrator of EPA Region III; Lisa P. Jackson, Administrator of EPA; Ken Salazar, Secretary of the United States Department of Interior; Joseph Pizarchik, Director of the Office of Surface Mining Reclamation and Enforcement; Corporation Service Company, Registered Agent for Independence Coal Company, Inc.; and Corporation Service Company, Registered Agent for Marfork Coal Company, Inc.  The NOI was also sent to the Regional Director for the Appalachian Region of the Office of Surface Mining Enforcement and Reclamation via first class mail, postage prepaid.  All certified mail recipients received the NOI by March 16, 2012.

## FIRST CLAIM FOR RELIEF
(Clean Water Act Violations of WV/NPDES Permit Number WV1015044)

66.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 65 supra.

67.     Marfork's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

68.     The condition of WV/NPDES Permit Number WV1015044 that provides that the "[t]he discharge or discharges covered by [this] WV/NPDES  are to be of such quality so as not to cause a violation of applicable water quality standards promulgated by 47 CSR 2" is an enforceable "effluent standard[] or limitation[]s" for purposes of section 505(a)(1) of the Clean Water Act because it is a condition of a permit issued under section 402 of the Act.  33 U.S.C. § 1365(f).

69.     The West Virginia selenium water quality standards of 5 μg/l chronic and 20 μg/l

12

acute are applicable water quality standards promulgated by 47 C.S.R. § 2 for purposes of the permit condition described in the above paragraph.

70.     As established by its reporting regarding monitoring point DBF under the Beetree permits, Marfork caused violations of the chronic and acute selenium water quality standards in Brushy Fork by its discharges from Outfall 001 regulated by WV/NPDES Permit WV1015044 on multiple occasions between December 1, 2008, and January 31, 2012.

71.     Accordingly, Marfork is violating the condition of WV/NPDES Permit WV1015044 that prohibits discharges that cause water quality standards violations.

72.     Unless enjoined, Marfork will remain in continuing violation of the Clean Water Act.

73.     On information and belief, Plaintiffs allege that Marfork is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the condition of its permit prohibiting discharges that cause water quality standards violations because Marfork has taken no meaningful action to eradicate the underlying cause of the violations.

74.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Marfork is liable for civil penalties of up to $37,500 per day of violation for its violations of the terms and conditions of WV/NPDES Permit Number WV1015044.

### SECOND CLAIM FOR RELIEF
(SMCRA Violations Related to the Condition of WV/NPDES Permit Number WV1015044
Prohibiting Water Quality Standards Violations)

75.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 74 supra.

76.     Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

77.     As discussed above, federal and state regulations under SMCRA include performance standards that prohibit surface mining operations that cause violations of water quality standards.

78.     Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

79.     WV/NPDES Permit Number WV1015044 regulates Marfork's discharges from its Brushy Fork Slurry Impoundment (WVSCMRA Permit No. O301095).

80.      Marfork's discharges from Outfall 001 of the Brushy Fork Slurry Impoundment have caused violations of the chronic and acute selenium water quality standards in Brushy Fork on multiple occasions between December 1, 2008, and January 31, 2012.

81.     Consequently, Marfork has committed one or more violations of the performance standards incorporated in the regulations under SMCRA and WVSCMRA.

82.     Because those performance standards are permit conditions, Marfork is also in violation of the terms and conditions of WVSCMRA Permit O301095.  Unless enjoined, Marfork will remain in ongoing and continuing violation of that permit, SMCRA, and WVSCMRA.

83.     On information and belief, Plaintiffs allege that Marfork is in continuing and/or intermittent violation of SMCRA, WVSCMRA, and WVSCMRA Permit O301095 as a result of its violations of water quality standards and of the condition of WV/NPDES Permit Number WV1015044 that prohibits discharges that cause violations of water quality standards because Marfork has taken no meaningful action to eradicate the underlying cause of the violations.

**THIRD CLAIM FOR RELIEF**
(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities at the Brushy Fork Slurry Impoundment)

84.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1

through 83 supra.

85.     As discussed above, WVSCMRA performance standards at 38 C.S.R. § 2–14.5.c require the installation, operation, and maintenance of adequate treatment facilities when necessary to prevent discharges that violate state or federal law.

86.     As described above, Marfork's discharges of selenium have resulted in numerous violations of the Clean Water Act, SMCRA, WVSCMRA, and WVSCMRA Permit O301095, demonstrating the company's failure to install, operate, and maintain adequate treatment facilities.

87.     Consequently, Marfork has violated the WVSCMRA standards at 38 C.S.R. § 2–14.5.c.

88.     Because those performance standards are permit conditions, Marfork is also in violation of the terms and conditions of WVSCMRA Permit O301095.

89.     On information and belief, Plaintiffs allege that Marfork is in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permit O301095 as a result of its failure to install, operate, and maintain adequate treatment facilities.

90.     Unless enjoined, Marfork will remain in continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permit S502007.

### FOURTH CLAIM FOR RELIEF
(Clean Water Act Violations of WV/NPDES Permit Number WV1029711)

91.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 90 supra.

92.     Independence's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

93.     The selenium limits in WV/NPDES Permit Number WV1029711 are "effluent standards or limitations" for purposes of section 505(a)(1) of the Clean Water Act because they are a condition of a permit issued under section 402 of the Act.  33 U.S.C. § 1365(f).

94.     Each and every discharge in excess of the effluent limitations in WV/NPDES Permit Number WV1029711 is actionable under section 505(a)(1) of the Clean Water Act.  33 U.S.C. § 1365(a)(1).

95.     A violation of an average monthly effluent limitation in a permit is considered to be a violation on each and every day of that month.

96.     Independence violated the selenium effluent limitations in WV/NPDES Permit WV1027911 at least 25 times between March 1, 2010, and March 31, 2012, amounting to 320 cumulative days of violations.

97.     Unless enjoined, Independence will remain in continuing violation of the Clean Water Act.

98.     On information and belief, Plaintiffs allege that Independence is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in WV/NPDES Permit Number WV1029711 because Independence has taken no meaningful action to eradicate the underlying cause of the violations.

99.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Independence is liable for civil penalties of up to $37,500 per day of violation for its violations of the effluent limitations in WV/NPDES Permit Number WV1029711.

**FIFTH CLAIM FOR RELIEF**
(SMCRA Violations Related to Violations of Effluent Limitations in WV/NPDES Permit
WV1029711)

100.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 99 supra.

101.    Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

102.    As discussed above, federal and state regulations under SMCRA include performance standards that (1) prohibit surface mining operations that cause violations of effluent standards in Clean Water Act permits and (2) prohibit operations from causing material damage to the hydrologic balance outside of the permit area.

103.    Under 38 C.S.R. § 2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

104.    WV/NPDES Permit Number WV1029711 regulates Independence's discharges from its Crescent No. 2 Surface Mine (WVSCMRA Permit No. S502007).

105.     Independence accrued at least 320 days of violation of the effluent limitations in WV/NPDES Permit WV1029711 between March 1, 2010, and March 31, 2012.

106.    Consequently, Independence has committed one or more violations of the performance standards incorporated in the regulations under SMCRA.

107.    Because those performance standards are permit conditions, Independence is also in violation of the terms and conditions of WVSCMRA Permit S502007.

108.    Unless enjoined, Independence will remain in ongoing and continuing violation of SMCRA, WVSCMRA, and WVSCMRA Permit S502007.

109.    On information and belief, Plaintiffs allege that Independence is in continuing and/or intermittent violation of SMCRA, WVSCMRA, and WVSCMRA Permit S502007 as a result of its violations of the effluent limitations in WV/NPDES Permit Number WV1029711 because Independence has taken no meaningful action to eradicate the underlying cause of the violations.

**SIXTH CLAIM FOR RELIEF**

(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities at the Crescent
No. 2 Surface Mine)

110.    Plaintiffs incorporate by reference all allegations contained in paragraphs 1
through 109 supra.

111.    As discussed above, WVSCMRA performance standards at 38 C.S.R. § 2–14.5.c
require the installation, operation, and maintenance of adequate treatment facilities when
necessary to prevent discharges that violate state or federal law.

112.    As described above, Independence's discharges of selenium have resulted in
numerous violations of the Clean Water Act, SMCRA, WVSCMRA, and Surface Mining Permit
S502007, demonstrating the company's failure to install, operate, and maintain adequate
treatment facilities.

113.    Consequently, Independence has violated the WVSCMRA standards at 38 C.S.R.
§ 2–14.5.c.

114.    Because those performance standards are permit conditions, Independence is also
in violation of the terms and conditions of Surface Mining Permit S502007.

115.    On information and belief, Plaintiffs allege that Independence is in continuing
violation of SMCRA, WVSCMRA, and Surface Mining Permit S502007 as a result of its failure
to install, operate, and maintain adequate treatment facilities.

116.    Unless enjoined, Independence will remain in continuing violation of SMCRA,
WVSCMRA, and Surface Mining Permit S502007.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this court enter an Order:

(1).    Declaring that Defendants have violated and are in continuing violation of the
Clean Water Act and SMCRA;

18

(2).     Enjoining Marfork from operating the Brushy Fork Slurry Impoundment in such a manner as will result in further violations of the condition of WV/NPDES Permit WV1015044 that prohibits discharges that violate water quality standards;

(3).     Ordering Marfork to immediately comply with all terms and conditions of WV/NPDES Permit WV1015044;

(4).     Ordering Marfork to immediately comply with all terms and conditions of WVSCMRA Permit Number O301095 and all performance standards under SMCRA and WVSCMRA;

(5).     Enjoining Independence from operating the Crescent No. 2 Surface Mine in such a manner as will result in further violations of the selenium effluent limitations in WV/NPDES Permit WV1029711;

(6).     Ordering Independence to immediately comply with all terms and conditions of WV/NPDES Permit WV1029711;

(7).     Ordering Independence to immediately comply with all terms and conditions of WVSCMRA Permit S502007 and all performance standards under SMCRA and WVSCMRA;

(8).     Ordering Defendants to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

(9).     Ordering Defendants to conduct monitoring and sampling to determine the environmental effects of their violations, to remedy and repair environmental contamination and/or degradation caused by their violations, and restore the environment to its prior uncontaminated condition;

(10).     Awarding Plaintiffs' attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

(11).     Granting other such relief as the Court deems just and proper.

Respectfully submitted,

**/s/ Derek O. Teaney**
DEREK O. TEANEY (W.Va. Bar No. 10223)
JOSEPH M. LOVETT (W.Va. Bar No. 6926)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 793-9007

Counsel for Plaintiffs

**APPENDIX A      EXCURSIONS ABOVE SELENIUM WATER QUALITY STANDARDS CAUSED BY DISCHARGES REGULATED BY WV/NPDES PERMIT WV1015044**

ISM LOCATION DBF (WV1021788-DBF)

| DATE | TYPE | PARAMETER | UNITS | MEASURED VALUE |
|------|------|-----------|-------|----------------|
| December 2008 | Minimum | Selenium | µg/l | 5.19 |
| December 2008 | Average | Selenium | µg/l | 5.25 |
| December 2008 | Maximum | Selenium | µg/l | 5.31 |
| February 2009 | Average | Selenium | µg/l | 5.19 |
| February 2009 | Maximum | Selenium | µg/l | 6.63 |
| October 2009 | Average | Selenium | µg/l | 6.89 |
| October 2009 | Maximum | Selenium | µg/l | 9.16 |
| June 2010 | Average | Selenium | µg/l | 5.185 |
| June 2010 | Maximum | Selenium | µg/l | 5.97 |
| September 2010 | Average | Selenium | µg/l | 41.27 |
| September 2010 | Maximum | Selenium | µg/l | 75.52 |
| November 2010 | Minimum | Selenium | µg/l | 7.08 |
| November 2010 | Average | Selenium | µg/l | 7.625 |
| November 2010 | Maximum | Selenium | µg/l | 8.17 |
| December 2010 | Minimum | Selenium | µg/l | 8.44 |
| December 2010 | Average | Selenium | µg/l | 9.79 |
| December 2010 | Maximum | Selenium | µg/l | 11.14 |
| January 2011 | Average | Selenium | µg/l | 5.38 |
| January 2011 | Maximum | Selenium | µg/l | 6.61 |
| March 2011 | Minimum | Selenium | µg/l | 5.24 |
| March 2011 | Average | Selenium | µg/l | 5.475 |
| March 2011 | Maximum | Selenium | µg/l | 5.71 |
| April 2011 | Maximum | Selenium | µg/l | 5.57 |
| July 2011 | Minimum | Selenium | µg/l | 6.97 |
| July 2011 | Average | Selenium | µg/l | 7.535 |
| July 2011 | Maximum | Selenium | µg/l | 8.1 |
| September 2011 | Average | Selenium | µg/l | 6.815 |
| September 2011 | Maximum | Selenium | µg/l | 8.76 |
| October 2011 | Minimum | Selenium | µg/l | 5.71 |
| October 2011 | Average | Selenium | µg/l | 5.77 |
| October 2011 | Maximum | Selenium | µg/l | 5.83 |
| November 2011 | Maximum | Selenium | µg/l | 5.9 |
| December 2011 | Minimum | Selenium | µg/l | 5.13 |
| December 2011 | Average | Selenium | µg/l | 5.41 |
| December 2011 | Maximum | Selenium | µg/l | 5.69 |
| January 2012 | Minimum | Selenium | µg/l | 6.22 |
| January 2012 | Average | Selenium | µg/l | 6.9 |
| January 2012 | Maximum | Selenium | µg/l | 7.58 |

**APPENDIX B**     **VIOLATIONS OF THE EFFLUENT LIMITS IN WV/NPDES PERMIT WV1029711**

OUTFALL 001

| DATE | SOURCE | TYPE | PARAMETER | UNITS | LIMIT | MEASURED VALUE | # OF VIOLATIONS |
|------|--------|------|-----------|-------|-------|----------------|-----------------|
| March 2010 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 6.29 | 31 |
| March 2010 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 6.77 | 1 |
| March 2011 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 13.78 | 31 |
| March 2011 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 14.46 | 1 |
| March 2011 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 13.1 | 1 |
| April 2011 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 6.735 | 30 |
| April 2011 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 11.28 | 1 |
| September 2011 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 9.48 | 30 |
| September 2011 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 9.48 | 1 |
| October 2011 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 9.19 | 31 |
| October 2011 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 12.32 | 1 |
| November 2011 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 18.545 | 30 |
| November 2011 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 18.11 | 1 |
| November 2011 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 18.98 | 1 |
| December 2011 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 9.125 | 31 |
| December 2011 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 12.88 | 1 |
| January 2012 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 13.2 | 31 |
| January 2012 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 13.1 | 1 |
| January 2012 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 13.3 | 1 |
| February 2012 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 10.345 | 29 |
| February 2012 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 9.54 | 1 |
| February 2012 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 11.15 | 1 |
| March 2012 | DMRs | Monthly Average | Selenium | µg/l | 4.7 | 12.805 | 31 |
| March 2012 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 11.95 | 1 |
| March 2012 | DMRs | Daily Maximum | Selenium | µg/l | 8.2 | 13.66 | 1 |

TOTAL DAYS OF VIOLATION     320