IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

OHIO VALLEY ENVIRONMENTAL COALITION, INC.,
WEST VIRGINIA HIGHLANDS CONSERVANCY, INC.,
COAL RIVER MOUNTAIN WATCH,
and SIERRA CLUB,

    Plaintiffs,

v.            CIVIL ACTION NO. 5:12-1464

MARFORK COAL COMPANY, INC., and
INDEPENDENCE COAL COMPANY, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

  Plaintiffs[1] in this case previously moved for partial summary judgment against Defendant Independence Coal Company ("Independence"). ECF No. 53. In its response thereto, Independence failed to contest any of Plaintiffs' factual assertions or legal arguments regarding liability. The Court therefore entered an Order on April 8, 2013, **GRANTING** Plaintiffs' motion for summary judgment. ECF No. 78. This memorandum opinion sets forth in more detail the basis for that ruling. Because the Court bifurcated the proceedings on liability and remedy, the Court's previous Order, and this opinion, only address Independence's liability.

  **I.**  **BACKGROUND**

  Plaintiffs bring this action pursuant to the citizen suit provisions of the Federal Water Pollution Control Act ("Clean Water Act") and the Surface Mining Control and Reclamation Act

---

[1] Plaintiffs in this case are Ohio Valley Environmental Coalition, Inc., West Virginia Highlands Conservancy, Inc., Coal River Mountain Watch, and Sierra Club.

("SMCRA"). Plaintiffs allege that Independence violated these statutes by discharging excessive amounts of selenium into the waters of West Virginia. Before proceeding to the parties' arguments, the Court will first discuss the relevant regulatory framework and then the factual background of this case.

### A. Regulatory Framework

The primary goal of the Clean Water Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To further this goal, the CWA prohibits the "discharge of any pollutant by any person" unless a statutory exception applies; the primary exception is the procurement of a National Pollutant Discharge Elimination System ("NPDES") permit. 33 U.S.C. §§ 1311(a), 1342. Under the NPDES, the U.S. Environmental Protection Agency ("EPA") or authorized state agency can issue a permit for the discharge of any pollutant, provided that the discharge complies with the conditions of the CWA. 33 U.S.C. § 1342. A state may receive approval to administer a state-run NPDES program under the authority of 33 U.S.C. § 1342(b). West Virginia received such approval and its NPDES program is administered through the West Virginia Department of Environmental Protection ("WVDEP").

Coal mines are also subject to regulation under the Surface Mining Control and Reclamation Act and the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA"). These statutes prohibit any person from engaging in or carrying out surface coal mining operations without first obtaining a permit. 30 U.S.C. § 1256. Regulations passed pursuant to WVSCMRA require applicable performance standards to be incorporated as a condition of all mining permits. W. Va. Code R. § 38-2-3.33c. One of these performance standards requires that mining discharges "shall not violate effluent limitations or cause a violation

of applicable water quality standards." *Id.* § 38-2-14.5b. Water quality standards establish conditions which must be maintained to preserve designated uses of the state's waters (such uses include public health and the protection of animal, aquatic, and plant life). Another performance standard mandates that "[a]dequate facilities shall be installed, operated and maintained using the best technology currently available . . . to treat any water discharged from the permit area so that it complies with the requirements of subdivision 14.5.b of this section." *Id.* § 38-2-14.5.c.

**B.     Factual Background**

Independence operates the Crescent Number Two Surface Mine ("Crescent Mine") in Boone County, West Virginia, pursuant to WVSCMRA Permit S502007. The operation causes discharge into the stream known as Petry Fork.[2] Independence is authorized to discharge pollutants from its Crescent Mine operations by WV/NPDES Permit WV1029711.[3] This permit authorizes Independence to discharge limited amounts of pollutants. Pursuant to the limitations expressed in the permit, Independence may not discharge amounts of selenium that exceed a monthly average concentration of 4.7µg/L and a maximum daily concentration of 8.2µg/L. The permit requires Independence to measure and report the concentration of selenium at the outlet sites. These reports are known as Discharge Monitoring Reports, or "DMRs." The DMRs that Independence submitted to WVDEP reveal that Independence violated either the monthly average or daily maximum selenium limitations at least 37 times since March 5, 2010. Compl. App'x A; ECF No. 53-2, 53-3.

---

[2] WVDEP describes the stream and its flow as Petry Fork of "Matts Creek of West Fork of Pond Fork of Little Coal River." Permit WV1029711, ECF No. 53-1.

[3] This permit was issued December 16, 2008, and expired December 16, 2012. Permit WV1029711, ECF No. 53-1.

Plaintiffs, environmental organizations whose members make use of the waters into which Independence is discharging pollutants, filed this suit pursuant to the citizen suit provisions of the CWA and the SMCRA. Plaintiffs assert three claims against Independence, all based upon its alleged discharge of selenium into Petry Fork of Matts Creek. First, Plaintiffs allege that Independence is in violation of the CWA and its WV/NPDES permit because it has violated the selenium effluent limits in the permit. Second, Plaintiffs allege that Independence is in violation of the SMCRA and its WVSCMRA permit for the same reason. Third, Plaintiffs claim that Independence is in violation of the SMCRA and its WVSCMRA permit for failing to install, operate, and maintain adequate treatment facilities as necessary to prevent discharges that violate state or federal law. Plaintiffs seek declaratory and injunctive relief, and civil penalties.

## II.  ANALYSIS

After setting forth the standard for summary judgment, the Court will first determine whether Plaintiffs have standing. Because the Court concludes that Plaintiffs have satisfied the constitutional and statutory standing requirements, it will then proceed to the merits of Plaintiffs' claims. As noted *supra*, all the facts and arguments Plaintiffs assert in support of summary judgment remain undisputed.

**A.   Legal Standard**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

**B.     Standing**

In order to bring any action in federal court, a plaintiff must have standing—that is, a plaintiff must have a sufficient personal stake in the outcome of the matter being litigated to make it justiciable under Article III of the Constitution. *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp* ("*Gaston Copper I*"), 204 F.3d 149, 153 (4th Cir. 2000) (citation omitted); *see also* U.S. Const. art. III (restricting federal courts to adjudicating "cases" and "controversies"). In order to satisfy the minimum constitutional requirements for standing, a plaintiff must demonstrate:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

When the plaintiff in question is an organization, it "has standing to sue on behalf of its members when '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 517 (4th Cir. 2003) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Among the injuries that may be addressed by a federal court are those to "an individual's aesthetic or recreational interests." *Gaston Copper I*, 204 F.3d at 154. This is of particular relevance to environmental cases. *See, e.g.*, *Sierra Club v. Morton*, 405 U.S. 727, 734–36 (1972). In environmental cases, the "relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff." *Laidlaw*, 528 U.S. at 181.

In addition to meeting the constitutional standing requirements, a plaintiff must also satisfy any statutory requirements for standing. *Gaston Copper I*, 204 F.3d at 155. The citizen suit provisions of the CWA and the SMCRA confer standing on any person "having an interest which is or may be adversely affected." 33 U.S.C. 1365(a), (g); 30 U.S.C. § 1270. The CWA permits such persons to commence a civil action against any person "who is alleged be in violation of . . . an effluent standard or limitation under [the CWA]." 33 U.S.C. 1365(a)(1). Similarly, the SMCRA authorizes civil actions to be asserted against any person "alleged to be in violation of any rule, regulation, order or permit issued pursuant to [the SMCRA]." 30 U.S.C. § 1270(a). These statutory grants of standing are coextensive with the constitutional requirements. *Gaston Copper I*, 204 F.3d at 152 (citing *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 16 (1981) (regarding CWA standing)); *Ohio Valley Envtl. Coal., Inc. v. Hobet Min., LLC*, 723 F. Supp. 2d 886, 902 (S.D. W. Va. 2010) (regarding standing under the SMCRA). Accordingly, if a

plaintiff meets the standing requirements of Article III, he also meets the standing requirements of the CWA and the SMCRA.

In this case, Plaintiffs assert organizational standing through three specific members: Maria Gunnoe, Vivian Stockman, and Chuck Nelson.[4] The declarations of these individuals, which are uncontested, demonstrate that they have satisfied each of the following elements of standing.

### 1. Injury in fact

Each of the three declarants has demonstrated a concrete and imminent harm to their recreational and other interests as a result of Independence's violations. Ms. Gunnoe, a member of all four plaintiff organizations, has used Petry Fork and Matts Creek throughout her lifetime. Gunnoe Dep. 26-27, ECF No. 53-8. In her childhood, she and her friends and family would "frequently picnic along the stream, play in the water and enjoy nature and the bounty of the fish and wildlife." Gunnoe Decl. ¶ 10, ECF No. 53-5. She used to "catch bait . . . downstream from Matts Creek. There was a lot of life in the stream." *Id.* ¶ 14. Now, her enjoyment of Petry Fork, Matts Creek, and the other streams are greatly diminished by selenium pollution. Today, she can "no longer wade or swim because of [her] fear of water pollution and selenium contamination." *Id.* ¶ 11. She states that "there's nearly no life left in the stream," Gunnoe Dep. 28, and because of the pollution, she cannot enjoy these activities with her grandchildren and as a result, "they are losing their mountain heritage and their ability to survive off the land in the future." Gunnoe Decl. ¶ 21.

---

[4] Plaintiffs note in their memorandum of law that in a previous case, this Court concluded that these same individuals had standing to prosecute violations of the CWA based on discharges that affected West Fork of Pond Fork of the Little Coal River. *See Ohio Valley Envtl. Coal. v. Independence Coal Co., Inc.*, 775 F. Supp. 2d 900, 913-14 (S.D. W. Va. 2011).

Vivian Stockman frequently travels throughout the mining areas of West Virginia, and enjoys "engaging in outdoor activities along West Virginia's streams such as hiking, nature observation, wading, bird watching, and especially nature photography." Stockman Decl. ¶ 6, ECF No. 53-6. On visits to Matts Creek, she observes negative changes and her enjoyment "was diminished by [her] concerns about accumulating effects of selenium from mines along Matts Creek on fish and wildlife. That this pollution continues to occur infuriated and aggravated me." *Id.* ¶ 16. At deposition, Ms. Stockman stated that she understands selenium is a bioaccumulative toxin and she becomes upset thinking about birds and "poor humans" who consume contaminated fish. Stockman Dep. 25, ECF No. 53-9.

Chuck Nelson has lived in West Virginia his entire life. Nelson Decl. ¶ 1, ECF No. 53-7. Mr. Nelson believes that "water is probably the most important resource we have," and laments that "the streams we relied on as kids are no longer clean and safe," and that "kids today cannot play and fish in the streams the way we once did." *Id.* ¶ 6. He "used to fish at the confluen[ce] of Matts Creek and the West Fork of Pond Fork," but has ceased that activity "because the water is too bad, partly because of selenium contamination." *Id.* ¶ 15. If the water were cleaner, he would resume fishing there. *Id.* His grandparents lived in the area of Matts Creek and it upsets him that he "can't take [his] family there to enjoy it the way that [he] did when [he] was growing up." *Id.* ¶ 16. He intends to continue his visits to the affected areas. *Id.* ¶¶ 13, 17.

The Court concludes that these three declarants have demonstrated a concrete and actual harm they suffered to their aesthetic and recreational interests as a result of selenium pollution in Matts Creek and Pond Fork.

### 2. Traceability

Plaintiffs' injuries are fairly traceable to Independence's discharge of selenium in violation of its WV/NPDES permit. Independence does not dispute that the areas used by Plaintiffs' declarants are areas that are affected by its mining and discharges. For example, Independence does not argue that its discharges do not reach the streams used by declarants, including Matts Creek. It is undisputed that Independence is discharging selenium into these streams; Independence's own measurements indicate as much. Ex. 2, ECF No. 53-2. Nor is it disputed that selenium has been identified as a toxic pollutant. 40 C.F.R. § 401.15. The Court finds that Plaintiffs' injuries are fairly traceable to Independence's alleged violations, because declarants claim the injuries resulted from elevated concentrations of selenium in the same streams into which Independence discharges pollutants including selenium. *See Crown Cent. Petroleum Corp.*, 95 F.3d at 362 (stating that plaintiffs may satisfy the "fairly traceable" element of standing in part by producing "water samples showing the presence of a pollutant of the type discharged by the defendant upstream").

### 3. Redressability

The Court finds that the final standing element is also satisfied. Plaintiffs seek injunctive relief requiring Independence to reduce its discharge of selenium to comply with the effluent limitations specified in its permit. This relief would provide redress for Plaintiffs' injuries by reducing the amount of selenium in Petry Fork, Matts Creek, and the other waters at issue in this case.

In summary, the Court finds that Plaintiffs have constitutional and statutory standing. Declarants are members of some or all of the plaintiff organizations. They have demonstrated: (1) injuries in fact, that are (2) fairly traceable to Independence's alleged violations, and which (3)

are able to be redressed by a favorable decision in this case. These declarants support Plaintiffs' organizational standing because individual members would have standing to sue in their own right, the interests Plaintiffs seek to protect are germane to their purpose to conserve and preserve the environment and natural resources, and finally, neither the claim asserted nor the relief requested requires participation of individual members.

**C.     Independence's Liability**

Having concluded that Plaintiffs have standing and this Court has jurisdiction, the Court now turns to the primary issue: whether Independence is liable for violations of the CWA and the SMCRA.

**1.     Sixty-Day notice provision**

First, the Court must determine whether Plaintiffs complied with the statutory procedural requirements. Under the CWA and the SMCRA, no citizen suit may be commenced prior to the provision of sixty days' notice to the alleged violator, the Administrator of the EPA or Secretary of the Department of Interior, and the state in which the alleged violation occurred. 33 U.S.C. § 1365(b)(1)(A); 30 U.S.C. § 1270(b)(1)(A); *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp. (Gaston Copper II)*, 629 F.3d 387, 391 (4th Cir. 2011). The notice

> shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a); *see also* 30 C.F.R. § 700.13(e). Providing such notice "is a mandatory condition precedent to filing suit under the [CWA]." *Gaston Copper II*, 629 F.3d at 399 (citing *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989)). "Without adequate notice, the Court does not have subject matter jurisdiction to hear the case." *Assateague Coastkeeper v. Alan & Kristin*

*Hudson Farm*, 727 F. Supp. 2d 433, 437 (D. Md. 2010) (citation omitted).  The purpose of the notice is to "allow a potential defendant to identify its own violations and bring itself into compliance voluntarily," *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 488 (2d Cir. 2001) (citations omitted), and to "allow[ ] Government agencies the opportunity to take responsibility to enforce the environmental regulations," *Assateague Coastkeeper*, 727 F. Supp. 2d at 437 (citing *Hallstrom*, 493 U.S. at 29).  Accordingly,

> as long as a notice letter is reasonably specific as to the nature and time of the alleged violations, the plaintiff has fulfilled the notice requirement.  The letter does not need to describe every detail of every violation; it need only provide enough information that the defendant can identify and correct the problem.

*San Francisco Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002).  "The sufficiency of the plaintiffs' notice letter must be assessed based on the facts that existed" at the time notice was provided.  *Gaston Copper II*, 629 F.3d at 401.

Plaintiffs have plainly satisfied their statutory obligation to provide sixty days' notice.  Plaintiffs sent notice on March 9, 2012.  Ex. 10, ECF No. 53-10.  Furthermore, Independence admits that the notice requirements of the CWA and the SMCRA are satisfied by the March 9, 2012 letter.  Def.'s Resp. to Pls.' Request for Admissions ¶ 1, ECF No. 53-11.

### 2. Continuing violation

The citizen suit provisions of the CWA and the SMCRA provide that any person may commence a civil suit against any other person who is "alleged to be in violation" of the pertinent statute, or of some order, rule, regulation, permit or effluent limitation issued under the statute.  33 U.S.C. § 1365(a)(1); 30 U.S.C. § 1270(a)(1).  In *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49 (1987), the U.S. Supreme Court held that this "alleged to be in violation" language authorized citizen suits so long as plaintiffs "make a good-faith allegation of continuous or intermittent violations."  484 U.S. at 64 (finding citizen suits may not be premised on "wholly

past" violations). On remand, the Fourth Circuit elaborated upon the Supreme Court's test, holding that, in order to establish jurisdiction, a citizen-plaintiff must prove, at trial, that an on-going violation of the Act had been occurring when the complaint was filed. *See Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.* ("*Gwaltney II* "), 844 F.2d 170, 171 (4th Cir. 1988); *Am. Canoe Ass'n v. Murphy Farms*, 412 F.3d 536, 539 (4th Cir. 2005). The Fourth Circuit held that "[c]itizen-plaintiffs may accomplish this [task] either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Id.* at 171-72; *see also Am. Canoe Ass'n*, 412 F.3d at 539.

There is no dispute that WV/NPDES Permit WV1029711 contains effluent limits for selenium of 4.7µg/L monthly average and 8.2µg/L daily maximum, which have been effective since December 16, 2008. Permit WV1029711, ECF No. 53-1. Thus, if Plaintiffs can demonstrate a continuing violation of these effluent limits as of the date of their complaint (May 9, 2012), then Plaintiffs are entitled to declaratory judgment regarding their claims for relief.

As the Fourth Circuit explained in *Gwaltney II*, a citizen-plaintiff can establish a continuing violation sufficient to warrant declaratory relief by proving either violations that occur on or after the date of the complaint, or a likelihood of the continued reoccurrence of intermittent or sporadic violations. 844 F.2d at 171–72. Here, Plaintiffs have easily satisfied the first prong of *Gwaltney II*. Independence's DMRs indicate that prior to filing the complaint, and after the complaint was filed (on May 31, 2012, June 30, 2012, and July 31, 2012), Independence reported selenium concentrations that exceeded the permitted amount. Ex. 2 at SC008515, ECF No. 53-2. Once again, Independence does not contest Plaintiffs' evidence. Accordingly, the Court finds

that Plaintiffs have satisfied their burden to establish continuous or intermittent violations by Independence.[5]

All three claims against Independence are premised upon a violation of the effluent limitations in its WV/NPDES permit. Because there is no genuine issue as to any material fact that Independence is in violation of its permit, Plaintiffs are entitled to summary judgment on all claims against Independence.

### III. CONCLUSION

For the reasons discussed above, the Court **FINDS** that Plaintiffs have standing and they have demonstrated continuous or intermittent violations by Independence of WV/NPDES Permit WV1029711. Additionally, the Court **FINDS** that there is no genuine issue of fact with respect to the issue of whether Independence violated the requirement to construct and install adequate treatment facilities. The Court therefore **GRANTS** summary judgment in favor of Plaintiffs on Counts Four, Five, and Six of the complaint.

As previously noted, this Order addresses only the liability phase of this litigation. The Court has entered a scheduling order, ECF No. 88, for Phase II of the litigation, in which the Court will determine the appropriate remedies. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: August 23, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE

---

[5] Plaintiffs' evidence suggests that Defendant has amassed 450 violations of its permit. Ex. 2, ECF No. 53-2; Ex. 3, ECF No. 53-3. Defendant did not specifically dispute this evidence. If it wishes to do so, Defendant shall first seek leave of the Court. In any event, the Court will further consider the exact number of violations during Phase II of these proceedings, in its determination of the appropriate remedies.